ORDERED in the Southern District of Florida on April 23, 2009.



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                                            CASE NO.: 05-15867-BKC-AJC
                                                                  CHAPTER 11
WYNWOOD COMMUNITY ECONOMIC
DEVELOPMENT CORPORATION, INC.,

    Debtor.
_____/

## MEMORANDUM ORDER DENYING STANDING TO PROSECUTE MOTION TO DISMISS

This matter came before the Court upon the Joint Motion to Dismiss (CP # 335) (the "Motion"), filed by tax lien certificate and special assessment lien holders, Moorings Financial, Inc., Properties Galore, Inc., 7th Cavalry Corp., Justin Israel, Charles Israel and Joel Israel (collectively the "Movants"). Based upon the facts of record and the applicable governing law, the Court denies the Motion.

### BACKGROUND

The relevant facts in this matter are undisputed. Pre-petition, Wynwood Community Economic Development Corp., Inc. (the "Debtor" or "Wynwood") and the Dade Foreign Trade

Zone, Inc. ("DFTZ") agreed to the combined plat identification of various tracts of real property located in Miami-Dade County for the sole and express purpose of eliminating certain rights of way. The resulting plat is known as the Wynwood Industrial Complex Plat (the "WIC Plat"). The WIC Plat was recorded in the public records of Miami-Dade County, Florida on December 24, 1996. The WIC Plat described the subject real property by reference to the legal descriptions associated with the tracts prior to execution of the WIC Plat, but did not delineate which tracts belonged to the Debtor and which tracts belonged to DFTZ.

The Miami-Dade County Tax Appraisers office assigned separate folio numbers to the real property located in each of the tracts in the WIC Plat. Folio number 01-3125-074-0010 was assigned to Tract A and identified the Debtor and DFTZ as jointly and severally responsible for the real property taxes accruing on Tract A. Folio number 01-3125-074-0020 was assigned to Tract B and indicated that the Debtor was completely responsible for the taxes accruing on Tract B. Despite the manner in which the property appraiser assigned folio numbers to Tracts A and B, in 1997 DFTZ paid the real property taxes for both Tracts A and B. No real property taxes were paid by the Debtor on Tracts C – F in 1997 and no real property taxes were paid thereafter on any of the tracts.

Realty Investment & Mortgage Corporation, Inc. ("RIMCI") a party in interest in this bankruptcy case, foreclosed on its mortgage on the land owned by DFTZ in the WIC Plat and is now DFTZ's successor in interest to those lands. RIMCI owns roughly 1/3 of the area comprising Tract A, which land is mostly vacant. Almost all of the balance of the land in Tract A is owned by the Debtor and is partially developed by an uncompleted 160,000 foot warehouse

and office facility in disrepair. RIMCI owns roughly $5/6^{th}$ of the area comprising Tract B and the Debtor owns the remainder of Tract B. However, all real property taxes for Tract B have been assessed solely against Debtor.

On April 1, 2005 and April 15, 2005 notices of applications for tax deeds by Wynwood Investments, LLC and Properties Galore, Inc., holders of tax certificates on the property located within the folio numbers assigned to Tracts A and B, respectively were served upon the Debtor and RIMCI. Pursuant to these applications, the real property referenced by these two folio numbers was scheduled to be sold on June 16, 2005 at a tax deed sale unless all of the taxes on such property were paid before that time. On June 15, 2005, the Debtor petitioned for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Accordingly, the tax deed sale, previously scheduled for June 16, 2005 was stayed pursuant to §362 of the Bankruptcy Code.

During the pendency of this bankruptcy case, many issues affecting the Debtors ownership interest in the real property, as well as interest in the real property of both the Debtor and RIMCI have been resolved. Claims of a reversionary interest in the real property by the City of Miami (the "City") as well as claims of a mortgage lien claimed by the City have been resolved by settlement. In addition, cross easements affecting all six of the tracts of real property in the WIC Plat have been settled amongst the various owners of land in the WIC Plat which now include, in addition to the Debtor and RIMCI, two additional parties. In addition, the Debtor and RIMCI entered into a Settlement Agreement (the "Agreement") in which the Debtor and RIMCI agreed to jointly market and sell their respective real property reflected in the WIC

Plat. The Agreement was approved by this Court and serves the goal of maximizing the value of the land owned by both the Debtor and RIMCI since the land owned by each of these parties in Tracts A and B are intermingled such that the property's maximum value could not be achieved unless the land is jointly sold. In addition, for various reasons, including the fact that land owned by RIMCI is situated under a portion of the improvements that were built on Tracts A and B, the land of the Debtor and RIMCI is not capable of partition.

The Movants have now filed their Motion to Dismiss this case predicated on the theory that if the case were to be dismissed, the tax deed sales could be rescheduled and the Movants could thereby redeem their certificates. However non-movant tax certificate holders, in particular, Certificate Investment Partners, LLC, ("Partners"), which also owns a tax certificate on Tract A in the principal sum of $1,000,000.00, vigorously oppose dismissal of this case. There is no assurance that its tax certificate will be redeemed. Moreover, if the land subject to the WIC Plat is sold off in separate tax deed sales, there is a likelihood that it will yield insufficient value to satisfy the indebtedness evidenced by Partners' certificate because a successful bidder at one auction would have to be successful at a subsequent auction to realize commercial value for the intermingled parcels of land. RIMCI, Partners and the Debtor have questioned the Movants' standing to seek dismissal of this case  A hearing was conducted by the Court on February 10, 2009, after which the parties were invited to submit competing memoranda on the issue of standing.

## ANALYSIS

This Court has jurisdiction, pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(G) to decide the pending motion, insofar as the Movants seek dismissal of these bankruptcy proceedings.

### DISMISSAL OF THE BANKRUPTCY CASE IS NOT APPROPRIATE[1]

Conversion or dismissal of a Chapter 11 case is governed by 11. U.S.C. 1112(b). Section 1112(b) requires that the bankruptcy court, upon request of a party in interest, convert or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate if the movant establishes "cause[.]" Although it is not necessary to reach the merits of the Movants Motion, the Movants have not and cannot demonstrate cause sufficient to warrant dismissal of this case for the purposes enumerated in their Motion and detailed at the hearing.

**A.    A Tax Deed Sale Would Not Be In the Best Interests of Creditors**

There is no question that the Movants are parties in interest and have standing to assert claims against the estate. *See, e.g., In re Lago,* 301 B.R. 365 (Bankr. S.D. Fla. 2003) (finding tax certificate holders are creditors and parties in interest with respect to amounts owed). However, as mere tax certificate holders, the Movants lack standing to seek dismissal of this chapter 11 case to initiate or recommence tax sale proceedings against the Debtor.

A tax certificate on real property is a creature of statute. Chapter 197 of the Florida Statutes creates an integrated statutory scheme for the sale of certificates on real property on which there are delinquent taxes. Tax certificates are auctioned off to the public by the tax collector pursuant to Fla. Stat. §197.432. "When a tax certificate holder buys a tax certificate, he

---

[1] While the issue before the Court at this time is whether, and to what extent, the Movants have standing to seek dismissal of this case to pursue a tax sale in state court, the court notes that even if such standing were to found sufficient cause to dismiss the case is lacking given the facts and circumstances involved.

purchases a secured claim and acquires a lien." *In re Lago,* 301 B.R. at 371. However, "a lien created through the sale of a tax certificate may not be enforced in any manner except as prescribed in this chapter [chapter 197]." Fla. Stat. §197.122. And, any such lien may subsequently be voided due to error of the property appraiser, tax collector, or other government official. Accordingly, the rights of tax certificate holders are contingent, in large part, on the actions of the tax collector.

Among the powers granted to tax collectors is the power to exclude from participation in a tax sale a party found to have violated the Florida statutory prohibition against direct contact with the subject real property owner. Florida Statute §197.432 expressly prohibits a tax certificate holder from having any direct contact with the owner of the property upon which the tax certificates were sold. The pertinent language of the statute provides

> The holder of a tax certificate may not directly, through an agent, or otherwise initiate contact with the owner of the property upon which he or she holds a tax certificate to encourage or demand payment . . . Any holder of a tax certificate who . . . initiates, or whose agent initiates, contact with the property owner upon which he or she holds a certificate, encouraging or demanding payment may be barred by the tax collector from bidding at a tax certificate sale. Unfair or deceptive contact by the holder of a tax certificate to a property owner to obtain payment is an unfair and deceptive trade practice, as referenced in s. 501.204(1), regardless of whether the tax certificate is redeemed. Such unfair or deceptive contact is actionable under ss. 501.2075-501.211. If the property owner later redeems the certificate in reliance on the deceptive or unfair practice, the unfair or deceptive contact is actionable under applicable laws prohibiting fraud.

Fla. Stat. § 197.432. The record in this case indicates that there was direct contact by at least one of the Movants with the Debtor, which may be in violation of applicable Florida law. The

Debtor has filed a letter (D.E. # 362) from one of the Movants which the Debtor contends constitutes an impermissible contact with the Debtor pursuant to Fla. Stat. §197.432 such that the capacity to even bid at a tax deed sale is, at this point of the case, speculative.

Moreover, Fla. Stat. §197.443 provides that where a tax certificate has been sold for unpaid taxes and such tax certificate is void for a variety of reasons, including because the taxes were paid, the land was not subject to taxation at the time the certificates were sold, the description of the property on the tax certificate is void or has been corrected, an error occurred which invalidates the sale, the certificate has been voided by judicial determination or an error has occurred for which the tax certificate may be corrected, the tax collector has the authority to either cancel or correct the tax certificate. In such an instance the holder of the tax certificate is solely entitled to obtain a return of the amount paid for the certificate and the refund is processed pursuant to the procedures set forth in Fla. Stat. §197.182. The Debtor has employed tax counsel for the purpose of challenging tax assessments made against the subject property in this case. As a consequence, proceedings to correct the Movants' tax certificates are likely to ensue whether or not this case is dismissed or if the Movants are otherwise allowed to apply to the tax collector to initiate or recommence tax deed sale proceedings while this case remains pending.[2] And, the bankruptcy court is the appropriate forum to resolve the validity of the various tax certificates.

---

[2] The Miami-Dade County Tax Collector has not joined in the Movant's Motion nor has it requested any other relief in these proceedings. It is doubtful that the Tax Collector would be able to honor an application by the Movants to initiate or recommence a tax deed sale without permission from this Court.

**B.     Movant's Lack Standing to Seek Dismissal and Initiate or Recommence a Tax Sale**

Florida Statute §197.502 sets forth the procedures for applying for a tax deed by the holder of a tax certificate. The pertinent provisions thereof are that the holder of any tax certificate, at any time after two years have elapsed since April 1 of the year of issuance of the tax certificate and before the expiration of seven years from the date of its issuance, can file an application for a tax deed with the tax collector. The application may be made on the entire parcel of property or any part of the property which is capable of being separated from the whole. The certificate holder who makes an application for a tax deed pursuant to Fla. Stat. §197.502 must pay the tax collector at the time of the application all amounts required for redemption or purchase of all other outstanding tax certificates, plus interest thereon, any omitted taxes, plus interest, any delinquent taxes, plus interest, and current taxes, if due, which cover the land. If there are no bidders at the public sale for taxes the clerk of the court shall enter the land on a list entitled "lands available for taxes" and shall notify the county commission and other persons holding certificates against the land that the land is available. Three years after the date the land was offered for public sale and has not been sold, the land shall escheat to the county free and clear of all taxes. In such an instance, all tax certificates, accrued taxes and liens of any nature against the property are cancelled as a matter of law.

The sales procedure for redemption of a tax certificate is governed by Fla. Stat. §197.542. The amount required to redeem the tax certificate, is the amount paid by the tax certificate holder to the clerk of the circuit court and charges for the cost of sale, redemption of other tax certificate on the same lands, and other costs of the applicant for the tax deed, including such costs as set

CASE NO.: 05-15867-BKC-AJC
CHAPTER 11
Page 9

forth in Fla. Stat. §197.502 for conducting a title search and, notifying parties with an interest in the land, and advertising the tax deed sale, plus interest at the rate of 1.5% per month for the period running from the month after the date of application for the deed through the month of the sale.

Pursuant to Fla. Stat. §197.482, after the expiration of seven years from the date of issuance of a tax certificate, if a tax deed has not been applied for on the property covered by the certificate and no other administrative or legal proceeding has existed of record, the tax certificate becomes null and void and is then cancelled by the tax collector.

Under the applicable statutory scheme, a tax certificate holder has no right to make any claim against the property owner and can only proceed to redeem its certificates through the tax collector for the funds paid for them utilizing the procedures specified and set forth in chapter 197 of the Florida Statutes.

The Movants' claims against the estate have not been liquidated and are subject to challenge under applicable Florida law. The debtor in the instant case is in the process of challenging all of the assessed taxes on the subject real property through specially retained counsel, pursuant to 11 USC §505(a).[3] Moreover, pursuant to Fla. Stat. §197.502, the capacity of the certificate holders to apply for a tax deed and for a sale to be conducted is also speculative, since the Movants have not redeemed all of the tax certificates outstanding on the real property.

The rights of third party creditors, including non-movant tax certificate holders would be impaired if the relief requested by the Movants were granted. For instances, were the case to be

---

[3] Were this case to be dismissed, the Debtor's ability to challenge all of the taxes assessed on the land would be limited in time by the state statute. However, there is no such bar under 11 USC §505(a) and the procedural posture of this case.

dismissed and were the Movants not to redeem the certificates of non-movant certificate holders holding tax certificates on property of the Debtor, their interests would be impaired by the refusal of the tax collector to initiate tax sale proceedings. Moreover, even if a sale where initiated, non-movant tax certificate holders would be forced to assume the risk that the winning bid would be insufficient to satisfy their respective tax certificates. At least one such non-movant tax certificate holder has indicated a preference to have its claim resolved together with all other tax certificate holders in proceedings before this Court.

It is well settled that "equality of distribution of the proceeds of the estate is one of the most fundamental tenets of United States bankruptcy system." *In re Petition of the Board of Directors of Hopewell International Insurance, Ltd.* 238 B.R. 25 (Bankr. S.D. N.Y. 1999). Because the relief requested by the Movants could unfairly impair the rights of creditors of equal standing, granting the Movants' relief would defeat "the prime bankruptcy policy of equality of distribution among creditors of the debtor." See *In re M & L Business Machine Company, Inc.*, 184 B.R. 136 (Bankr. D. Col. 1995); *In re Barney and Carey Company*, 170 B.R. 17 (Bankr. D.Mass 1994) ("The prohibition against unfair discrimination requires equal treatment of similarly situated creditors.") (citations omitted).

Under similar circumstances, the court in *In re Wells Properties, Inc.*, 102 B.R. 685 (N.D. Ill. 1989) denied stay relief to tax certificate holders, where under state law the holders had no right to demand payment of any sum, either from the debtor or its property. In *Wells Properties*, a certificate holder had applied for a tax deed and obtained a certificate of purchase of the debtor's real property under the Illinois tax certificate statute, a statutory scheme almost

identical to the one created by the Florida legislature. The certificate holder in *Wells Properties*, moved for relief from the automatic stay in order to complete its acquisition of the debtor's property. The tax certificate holders in *Wells Properties* had an even stronger claim than the Movants here as they already had a certificate of purchase of the land and merely sought relief from the stay to perfect their interests in the real property of the debtor. Here, the certificate holders have only a speculative or a conjectural claim which could, under certain circumstances, mature into ownership of property of the Debtor. Perhaps the Movants, or some of them, will be repaid the face value of their certificates from the proceeds of a tax deed auction if an appropriately high bid of redemption is received at an auction, a future possibility that is unpredictable.

While the Movants may have standing, as tax certificate holders, to seek direct payments from the Debtor under a plan confirmed by this Court, the Movants do not have standing to seek dismissal of this case, where they cannot assert any claim directly against the Debtor and any claims which they can possibly assert are merely speculative or conjectural at best. If the tax certificates are cancelled after the taxes are contested by the Debtor under Florida law, tax certificate holders are limited to recovery of the amount paid for the certificate from the tax collector. Alternatively, if the tax certificates are deemed defective, the Movants can bring suit against the tax collector in state court to seek redemption of their certificates. There are a myriad of possibilities which could effect the Movants' claims. Importantly, under either scenario the Movants' sole lawful method of redress, in accordance with Chapter 197 of the Florida Statutes

is limited to satisfaction of the applicable tax certificate from the tax collector and direct action against the Debtor or the Debtor's property is prohibited.

In a bankruptcy case, speculative and hypothetical claims are insufficient to establish standing to pursue dismissal of a bankruptcy case. *See In Re Citation Corporation*, 371 B.R. 517 (N.D. Ala. 2007); *Shotz v. Cates,* 256 F. 3d 1077, 1082 (11 h Cir. 2001). In the bankruptcy context, the movant's burden of demonstrating standing is especially harsh because the movant must demonstrate a direct, adverse effect if the relief sought is not granted. *In re Westwood County 2 Ass'n, Inc.*, 293 F.2d 1332, 1335 (11th Cir. 2002). In the instant case, the Movants have no direct means of recourse to pursue any relief from the Debtor. Since the Movants have no right to seek redemption or payment of their tax certificates from the Debtor, they lack standing to pursue dismissal of the Debtors bankruptcy case. *See In re Abijoe Realty Corporation,* 943 F.2d 121, 126 (1st Cir. 1991). The Movants' claims at this stage of the proceeding as they pertain to the Debtor, are no more than hypothetical and speculative. Moreover, as the Movants' claims on their tax certificates are controlled by the procedures established by the Florida Statute, this Court cannot confer standing upon the Movants to dismiss this case and pursue a tax deed sale, as such standing would work to the detriment of other tax certificate holders on property of the Debtor and thus would be antithetical to a primary purpose for which the Bankruptcy Code was established, namely equal treatment of creditors of a particular class.

For the foregoing reasons this Court finds and decides that the Movants lack standing to pursue dismissal of the Debtor's bankruptcy case to initiate or recommence tax deed sale proceedings in state court. Accordingly, it is

ORDERED AND ADJUDGED that the Joint Motion to Dismiss (CP # 335) is DENIED.

###

Submitted by :
Robert A. Stok, Esq.
Stok & Associates, P.A.
2875 N.E. 191st Street
Suite 304
Aventura, Florida 33180
Telephone: (305) 935-4440
Facsimile: (305) 935-4470
Email: support@stoklaw.com

Copies Furnished To:

(Attorney Stok is directed to serve a conformed copy of this Order upon all interested parties and to file a Certificate of Service)